UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL HALFORD,

    Plaintiff,

v.

CITY OF VANDALIA and JERRY BOWLING,

    Defendants.

Case No. 14-cv-1228-JPG-PMF

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants City of Vandalia and Jerry Bowling (Doc. 15). Plaintiff Michael Halford has responded to the motion (Doc. 18), and the defendants have replied to that response (Doc. 20).

**I.    Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

**II.     Facts**

Viewing the evidence and all reasonable inferences in favor of Halford, the evidence establishes the following relevant facts.

As of the fall of 2014, Halford had accumulated numerous firearms. He was anticipating selling them in an auction to raise funds to open a firearm dealership and to get the word out that he was a gun dealer. He planned to have the auction at his auto detail shop in Vandalia, Illinois, on Sunday, October 12, 2014, and expended funds to publicize the auction and hire an auctioneer. Halford's shop was located adjacent to a school. When school officials realized that the guns sold at Halford's Sunday auction would be picked up on Monday, a school day, an official called the Vandalia Police Department to express the school's concern about guns being in proximity to the school when children were present.

Bowling, a detective with the Vandalia Police Department, visited Halford's business on Thursday, October 9, 2014. There is disagreement about what happened during that visit, but taking Halford's evidence as true, the following events transpired. Bowling asked Halford if he was the person holding the gun sale, and Halford said that he was. Bowling then said he was there to "shut [him] down" and that Halford could not conduct the auction. Halford asked why, and Bowling told him that the state's attorney had said the sale was in violation of the law. Halford then told Bowling he had been doing this for a long time and was not aware of any law that would prevent him from having the sale, although Halford thought the new, lengthy concealed carry legislation might contain some regulations of which he was not aware. Bowling then asked Halford if all the guns he was going to sell were his, and Halford said they were. Then Bowling asked Halford for his Federal Firearms License ("FFL"), but Halford did not have an FFL. Bowling then asked Halford for his driver's license and ran a background check with the Illinois State Police. Halford asked why Bowling was running a background check, and

Bowling said it was because he did not know Halford and wanted to see if he had an FFL.   Halford told Bowling that information would not be included in a state police background check.   To be safe in light of his uncertainty about the concealed carry law, Halford told Bowling that "per his order" he would not conduct the sale.   Halford then told Bowling the conversation was over and asked Bowling to leave.   During the encounter, Halford perceived from Bowling's tone of voice, sharp statements and body posture that Bowling was in an aggressive mood and ready for a confrontation, but Bowling never drew his gun, arrested Halford, threatened to arrest Halford, or took any of his guns.

Later in the day, Halford called the state's attorney, who said he had not had any conversation with a police officer about Halford's auction.   The state's attorney went to Halford's shop to discuss the matter with him.   Halford then called the Springfield, Illinois, office of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and was told that there was no new law that would prevent him from having his gun auction as planned and that he could have the auction if he wanted to.   The ATF representative put Halford in contact with the ATF agent assigned to Halford's area, who confirmed that he could have the auction if he wanted to and offered to attend the sale to prevent any problems with the local police.

Halford then went to see the chief of the Vandalia Police Department, but he was not in the office.   Instead, Halford talked to Bowling and relayed the information he had received since their encounter earlier in the day indicating that he could lawfully conduct the sale.   Halford told Bowling, however, that he was not going to conduct the sale because of what Bowling had told him earlier in the day and that he would instead sue Bowling and the City of Vandalia.   Later Halford spoke to the police chief but does not recall the substance of the conversation.   Halford was afraid Bowling would come out to his shop again and cause more grief, so he cancelled the auction.

At some point after Bowling's visit to Halford's shop, Bowling discussed the situation with the

state's attorney, who advised him that no law or regulation would prevent Halford from conducting the auction.   Bowling did not convey this information to Halford.

Later, Halford sold his guns to various gun dealers but received less money than he had paid for them when he first bought them.   He has abandoned the idea of becoming a licensed gun dealer.

In October 2014, Halford filed this lawsuit asserting a claim under 42 U.S.C. § 1983 for violation of his constitutional rights to possess and sell guns in compliance with the law.   The defendants now ask the Court to grant summary judgment on the grounds that (1) Halford has not alleged or presented evidence that constitutional right of his has been violated, (2) he has not alleged or presented evidence of any policy, practice or custom of the City of Vandalia that would subject it to liability, and (3) to the extent Halford seeks to claim a violation of his due process rights under the Fourteenth Amendment, he has not shown he has been deprived of a property or liberty right by the defendants.

In response, Halford complains that the defendants' counsel never provided dates the defendants would be available for deposition and states that a worker at Halford's auto detail shop would corroborate his version of the October 9, 2014, encounter with Bowling at the shop.   He also contends the defendants have violated his constitutional right to have a gun auction and argues the City of Vandalia should be liable for failing to train Bowling properly as to the rules of gun auctions and to investigate once Halford registered a complaint.

In reply, the defendants note that their counsel made efforts to contact Halford about scheduling depositions but that they were never able to contact each other.   The defendants note that discovery closed on August 7, 2015, and Halford should not be able to raise the lack of discovery more than a month later.

**III.**     **Analysis**

       A.     <u>Discovery Matters</u>

It is possible Halford is asking the Court under Federal Rule of Civil Procedure 56(d) to defer considering or to deny the defendants' summary judgment motion because he has been unable to present facts essential to justify his case. However, Halford has not shown by affidavit or declaration that, for specific reasons, he cannot present facts essential to justify his opposition to the summary judgment motion. To the extent he believes he needs the affidavit of the worker at his detail shop to corroborate his testimony, that evidence is not essential to his case since the Court must take Halford's statements as true at this time even if they are uncorroborated. Nor has Halford explained in an affidavit or declaration why he has been unable to obtain that evidence at this time. To the extent Halford believes he needs the deposition testimony of the defendants to counter the summary judgment motion, he has not shown that such evidence is essential to support his case; such evidence would not be taken as true on summary judgment if it contradicted Halford's own testimony. For these reasons, to the extent Halford seeks relief under Rule 56(d), the Court denies the motion.

       B.     <u>Constitutional Right</u>

To the extent the defendants argue Halford has not alleged or presented evidence of the violation of a constitutional right, they have not carried their burden of showing they are entitled to judgment as a matter of law on such a claim as to Bowling individually

As for Halford's claim under the Second Amendment, applicable to the states under the Fourteenth Amendment due process clause, *see McDonald v. City of Chi.*, 561 U.S. 742, 749 (2010), a gun seller has "associational standing" to sue to enforce the Second Amendment rights of his potential customers to purchase and possess guns. *See, e.g., Second Amendment Arms v. City of Chi.*, No.

10-CV-4257, 2015 WL 5693724, at *5 (N.D. Ill. Sept. 28, 2015). It is also an open question whether and to what extent the Second Amendment directly protects the sale of guns. *See id.* at *13. The defendants have not fleshed out the contours of these rights in their brief and have not convinced the Court that Bowling's instruction to Halford not to hold his auction did not violate those rights.

To the extent Halford claims his right to due process has been denied by the defendants' conduct, again, the defendants have not carried their burden of showing they are entitled to judgment as a matter of law. As noted above, the contours of a gun-seller's right to sell guns is not well-defined, and the defendants have not convinced the Court they are entitled to judgment as a matter of law for the deprivation of any such right without due process of law.

C.  Municipal Liability

To the extent Halford seeks to hold the City of Vandalia liable for a constitutional violation, he has not pointed to any evidence that would justify imposing liability on the municipality. A municipality may only be held liable under § 1983 for a constitutional violation if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978); *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

There is no evidence the City of Vandalia had an express policy, widespread custom or final policymaker calling for preventing legal gun auctions. In his deposition, Halford testified that he knows of no such evidence, although he states in his response to the defendants' summary judgment motion that the City of Vandalia should be liable because it hired incompetent officers, inadequately trained them,

and failed to investigate Bowling once a complaint was made. This assertion, however, appears to be based solely on the fact that Bowling acted as he did. Since a municipality cannot be held liable for its employee's conduct on the basis of *respondeat superior*, *id.* at 690, and since there is no evidence from which a reasonable jury could conclude that the City of Vandalia bore any responsibility for that conduct, Halford cannot avoid summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 15). The motion is **DENIED** to the extent it seeks relief under Rule 56(d), is **GRANTED** to the extent it seeks summary judgment in favor of the City of Vandalia, and is **DENIED** to the extent it seeks summary judgment in favor of Bowling;

- **REFERS** this case pursuant to Local Rule 72.1(c) to Magistrate Judge Philip M. Frazier for an expedited settlement conference;

- **VACATES** the current Final Pretrial Conference date of January 13, 2016, and the Trial date of January 25, 2016. The Court will notify the parties when new dates are set; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:** December 23, 2015

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**